**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------X

SANDRA LYKES f/k/a SANDRA RIVERA,  :

                Plaintiff,  :

                             :           **Index No.: 15-CV-05343**

  -against-  :

PREMIER SOLUTIONS OF NY INC., JAMES DAVID,  :
MICHAEL LARSEN, and SCOTT TIERNEY,  :           COMPLAINT
                             :           (Trial by Jury Demanded)

               Defendants.  :

-------------------------------------------------------------------------X

Plaintiff SANDRA LYKES f/k/a SANDRA RIVERA ("Plaintiff" or "Ms. Lykes"), by her

attorneys, The Law Offices of Daniel Felber, complaining of defendants PREMIER SOLUTIONS

OF NY INC. ("Premier"), JAMES DAVID ("David"), MICHAEL LARSEN ("Larsen"), and

SCOTT TIERNEY ("Tierney", and, collectively with Premier, David and Larsen, "Defendants"),

alleges as follows:

## NATURE OF THE ACTION

1.   This is an action by an employee against her former employer for damages she sustained

as a result of her former employer's violations of Title VII of the Civil Rights Act of 1964, pursuant

to 42 U.S.C. § 2000e, et seq., New York State's Human Rights Law, NYS Exec. Law § 296, et

seq., and New York City's Human Rights Law, NYC Administrative Code § 8-107, et seq.

1

## PARTIES

2.  Plaintiff is a citizen and resident of the State of New York, and resides in Richmond County, New York.

3.  Defendant Premier is and was, at all times relevant herein, a domestic limited liability company duly authorized to transact business in the State of New York, with it/s principal place of business located at 648 Bay Street, Staten Island, New York.

4.  On information and belief, Defendant David is a citizen and resident of the State of New York and was, at all relevant times, the Chief Operating Officer of Premier.

5.  On information and belief, Defendant Larsen is a citizen and resident of the State of New York and was, at all relevant times, the Chief Executive Officer of Premier

6.  On information and belief, Defendant Tierney is a citizen and resident of the State of New York and was, at all relevant times, the President of Premier.

## JURISDICTION AND VENUE

7.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1357, in that Plaintiff is asserting claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* This Court has supplemental jurisdiction over Plaintiff's state and local law claims pursuant to 28 U.S.C. § 1367(a).

8.  Venue in the Eastern District of New York is appropriate pursuant to 28 U.S.C. § 1391(b), in that a substantial part of the events giving rise to Plaintiff's claims occurred within the Eastern District of New York.

9. Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on or about July 8, 2014 alleging unlawful discrimination against Defendant Palmco, Premier Solutions of NY, Inc. ("Premier") and James David ("David"), and Plaintiff's joint employer, Palmco Energy PA, LLC a/k/a Columbia Utilities, LLC ("Palmco"). Plaintiff also named both Larsen and Tierney in her EEOC complaint.

10. The EEOC, in turn, separated Plaintiff's EEOC complaint into two separate charges; one against Defendant Palmco ("Charge 1") and one against Premier and David ("Charge 2").

11. The EEOC provided Plaintiff with a "Right to Sue" letter, dated March 31, 2015 with respect to Charge 1.

12. On June 16, 2015, the EEOC filed a written Determination, finding reasonable cause to believe that Premier and David violated Plaintiff's Title VII rights and required Plaintiff and the Defendants to enter into a conciliation process to resolve Plaintiff's claims.

13. The conciliation process has since failed, and the EEOC issued Plaintiff a "Right to Sue" with regard to Charge 2 on August 11, 2015.

14. Because of the ninety day statute of limitations regarding Charge 1, Plaintiff was constrained to commence a civil action in the Eastern District of New York against Palmco on June 28, 2015. That matter is pending under case number 1:15-CV-03760-JBW-CLP. In lieu of an Answer, Palmco filed a FRCP Rule 12(b)(6) motion to dismiss for failure to state a claim; Plaintiff's opposition is due on October 15, 2015.

3

## STATEMENT OF FACTS

15. Premier is a marketing company that provides door-to-door sales and telemarketing services exclusively to Palmco, a third-party energy provider.

16. On February 15, 2013, Plaintiff was hired jointly as a corporate recruiter for Premier and as a human resources manager for Palmco.

17. Prior to working for Premier and Palmco, Plaintiff worked for five years as a human resources specialist and recruiter assistant for Camp Lejeune, the United States Marine Corps base in Jacksonville, North Carolina.

18. During her tenure with Defendants, Plaintiff performed services for both Premier and Palmco, including, among other tasks, managing budgets, executing sales strategies, servicing customer accounts, training employees, and creating internal training and employee management materials.

19. Plaintiff was financially compensated for her services by both Premier and Palmco.

20. Throughout her employment, Plaintiff reported directly to David.

21. Throughout her employment, Plaintiff also reported to and worked closely with Larsen, Tierney, and Robert Palmese, the President of Palmco.

22. Throughout her employment, Plaintiff never had any disciplinary issues and was often commended by Defendants and Palmco for her quality performance.

23. In the fall of 2013, David began subjecting Plaintiff to sexual harassment.

24. The harassment included, but was not limited to, unwanted touching, sexually charged comments regarding Plaintiff's physique and appearance, and relentless requests for sex.

4

25. Beginning in the winter of 2013-2014, David's sexual harassment of Plaintiff became more aggressive.

26. David called Plaintiff frequently and at all hours of the day and night, repeatedly pressuring Plaintiff to have sexual relations with him.

27. Plaintiff repeatedly asked David to stop the harassment.

28. Undeterred, David sent text messages to Plaintiff, some as late as three and four o'clock in the morning, about personal matters.

29. For instance, in March 2014, David texted Plaintiff: "I want to sleep in your bed".

30. In response, Plaintiff complained about David's harassment to Larsen.

31. Upon information and belief, no employment action was taken to stop David's sexual harassment of Plaintiff, and it continued unabated.

32. Shortly after Plaintiff received David's text seeking to sleep with her, David cornered Plaintiff by the office copier and proclaimed that he "wanted to pop [her] titties". He further told Plaintiff: "I want to bite [your breasts]. I'm serious Sandra, I want to bite them."

33. Plaintiff again demanded that David cease his harassment, to no avail.

34. At various times, Plaintiff complained individually to Larsen, Tierney, and Palmese, about David's sexual harassment.

5

35. Rather than halt the harassment, Larsen, Tierney, and Palmese actively encouraged it.

36. For instance, when Plaintiff traveled to Maryland with David on a business trip, Larsen booked only one hotel room. When Plaintiff told Larsen that she refused to share a room with David, Larsen laughed and then reluctantly booked another hotel room for Plaintiff.

37. On a second occasion in April 2014, Larsen again only booked one hotel room for David and Plaintiff, but this time refused to book a second room.

38. Plaintiff was forced to drive through the night after a long work day in order to return home.

39. In April 2014 Plaintiff attended a sales strategy meeting with Larsen, Tierney and David.

40. During the meeting David remarked that in order for Plaintiff to increase sales she should "put [her] booty shorts on and work that corner", implying the actions of a street prostitute.

41. When Plaintiff objected to David's comment, Larsen responded: "Hey, but pretty girls get business."

42. Plaintiff again complained to Palmese, Larsen and Tierney that she was being victimized due to her sex – again to no avail.

43. On May 6, 2014, Plaintiff's then fiancé Sean Lykes was lawfully in the offices of Premier at 648 Bay Street, 2d Floor, Staten Island, New York.

44. Lykes met David in his office and requested that David cease his sexual harassment of Plaintiff.

6

45. In response, David repeatedly punched, choked and kicked Lykes, and then threw him down a flight of stairs, causing grievous bodily injury to Plaintiff, and requiring him to be removed by ambulance to Staten Island University Hospital.

46. David was arrested and prosecuted for assaulting Sean Lykes.

47. Plaintiff complained to Defendants and to Palmese that David's assault on Lykes was in retaliation for Plaintiff's complaints of sexual harassment.

48. Larsen told Plaintiff that he would speak with Palmese about Plaintiff's job.

49. On May 12, 2014 – a mere six days after David's attack on Lykes – Plaintiff's employment was terminated.

50. Upon information and belief, David continues to be employed by Premier and Palmco.

**PLAINTIFF'S JOINT EMPLOYMENT WITH PREMIER AND PALMCO**

51. For Title VII purposes, and as a matter of fact, Premier and Palmco jointly employed Plaintiff for the entirety of her employment with Defendants.

52. Premier only provides its services to Palmco, and Palmco only uses Premier for door to door sales and telemarketing of its energy services.

53. Premier and Palmco employed several employees in common, including David and Plaintiff.

54. According to a "Consulting Agreement" executed by Premier and Palmco, Palmco has ultimate control over Premier's employment policies and requires that Premier promptly report any and all policy violations, including sexual harassment.

55. In April 2011, Palmco, a/k/a Columbia Utilities, settled charges by the New York State Attorney General's Officer, including numerous allegations of false and deceptive marketing practices.

56. As part of that settlement, Palmco agreed to pay $2.2 million in restitution and penalties.

57. Palmco also agreed to "observe strict regulations to prevent future misconduct and protect consumers from deceptive business practices", including specific guidelines that Palmco salespersons must follow when dealing with customers and the "implement[ation of] strict quality assurance controls to prevent future sales misconduct".

58. The "Consulting Agreement" with Premier appears to be Palmco's attempt at complying with its settlement obligations. Thus, Palmco retained ultimate and even granular control over the activities of Premier's employees.

59. Furthermore, Palmco and its local alter ego, Columbia Utilities LLC, advertise their voluntary compliance with industry standards of conduct regarding marketing practices that obligate them to substantial oversight of their salespersons, regardless of whether they are otherwise directly employed by Premier.

60. Palmco advertises its compliance with the National Energy Marketers Association's National Marketing Standard of Conduct, which, in addition to numerous restrictions on the conduct of energy marketing, requires that "Suppliers [such as Palmco] shall be responsible for the conduct of their agents," explicitly including Premier's salespersons.

61. Columbia Utilities advertises its compliance with the "Statement of Principles for Marketing Retail Energy to Residential and Small Business Customers in New York State", that includes numerous oversight provisions regarding Columbia's sales representatives.

62. Premier and Palmco jointly paid Premier's and Palmco's employee's wages, including Plaintiff's.

63. During the relevant time period, the exterior of Premier's offices in Staten Island was plastered with posters advertising Columbia Utilities, a/k/a Palmco.

64. According to official company documents, Premier employees were told during their orientation process that "we are also known as Palmco."

65. According to official company documents, Premier salespersons were instructed to tell their potential customers that they work for Palmco.

66. Palmese, Palmco's President, intervened directly with internal employment issues at Premier, and Premier managers, including Larsen, reported to Palmco and Palmese.

67. Premier's managers also generally deferred to Palmco in making employment decisions.

**FIRST CAUSE OF ACTION**
**(Sex Discrimination under Title VII)**

68. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 60, above, with the same force and effect as if fully set forth herein.

69. Defendants discriminated against Plaintiff on the basis of her sex by subjecting Plaintiff to a hostile work environment based on her sex in violation of 42 U.S.C. § 2000e, *et seq.*

70. David's unwelcome sexual advances created an intimidating, hostile and offensive working environment that interfered with the Plaintiff's work performance.

9

71. David's conduct was severe and pervasive and created a work environment that was objectively and subjectively intimidating, hostile, abusive and offensive.

72. At all relevant times, Defendants had the authority to make personnel decisions and take action to curb David's unlawful behavior.

73. Defendants knew about David's conduct and failed to exercise reasonable care to prevent and correct his behavior.

74. Defendants' conduct was intentional, malicious and in reckless disregard of Plaintiff's protected rights under Title VII.

75. As a result of the Defendants' discrimination against Plaintiff, Plaintiff has sustained injury to her career and suffered stress and economic damages and other injury.

76. By reason of the foregoing, Defendants violated Title VII of the Civil Rights Act, and Plaintiff is entitled to economic damages in an amount to be determined at trial; compensatory damages in the amount to be determined at trial; punitive damages in the amount to be determined at trial; and attorneys' and expert fees and costs in an amount not presently capable of ascertainment.

## SECOND CAUSE OF ACTION
### (Retaliation under Title VII)

77. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 69, above, with the same force and effect as if fully set forth herein.

78. Plaintiff repeatedly objected to David's physical and verbal advances and inappropriate sexual comments.

79. Plaintiff complained to Defendants Larsen and Tierney that she was being victimized due to her sex.

80. Following Plaintiff's objections and complaints, Defendants subjected Plaintiff to further harassment.

81. For instance, David assaulted Plaintiff's fiancée in retaliation for his and her protected activity, and, immediately following Plaintiff's complaint of sexual harassment, Defendants retaliated against the Plaintiff by terminating her employment without cause.

82. Defendants' conduct was intentional, malicious and in reckless disregard of Plaintiff's protected rights under the federal civil rights laws.

83. As a result of Defendants' retaliation against Plaintiffs, Plaintiff has sustained injury to her career and has suffered stress and economic damages and other injury.

84. By reason of the foregoing, Defendants violated Title VII of the Civil Rights Act and Plaintiff is entitled to economic damages in an amount to be determined at trial; compensatory damages in the amount to be determined at trial; punitive damages in the amount to be determined at trial; and attorneys' and expert fees and costs in an amount not presently capable of ascertainment.

### THIRD CAUSE OF ACTION
### (Discrimination under New York Human Rights Law)

85. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 77, above, with the same force and effect as if fully set forth herein.

86. Defendants discriminated against Plaintiff on the basis of her sex by subjecting Plaintiff to a hostile work environment based on her sex in violation of NY Exec § 296, *et seq.*

87. Defendants, at all relevant times, had the authority to make personnel decisions, and were aware of David's unlawful conduct, yet took no action to stop it.

88. The hostile work environment created by Defendants was sufficiently severe and pervasive so as to detrimentally alter the terms, conditions and privileges of Plaintiff's employment.

89. As a result of Defendants' discrimination against Plaintiff, Plaintiff has sustained injury to her career and reputation, has suffered stress and economic damages and other injury.

90. By reason of the foregoing, Defendants violated Article 15 of the New York State Executive Law, specifically Executive Law §§ 290 et seq., 296 and 297 and Plaintiff is entitled to the following relief: economic damages in an amount to be determined at trial; and compensatory damages in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**
**(Retaliation under New York State Human Rights Law)**

91. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 83, above, with the same force and effect as if fully set forth herein.

92. Plaintiff repeatedly objected to David's physical and verbal advances and inappropriate sexual comments.

93. Plaintiff complained to Defendants Larsen and Tierney that she was being victimized due to her sex.

94. Following, Plaintiff's objections and complaints, Defendants subjected Plaintiff to further harassment.

95. For instance, David assaulted Plaintiff's fiancée in retaliation, and, immediately following Plaintiff's complaints about David's retaliatory assault, Defendants retaliated against the Plaintiff by terminating her employment without cause.

96. As a result of Defendants' retaliation, Plaintiff has sustained injury to her career and reputation, has suffered stress and economic damages and other injury.

97. By reason of the foregoing, Defendants violated the New York State Human Rights laws and Plaintiff is entitled to the following relief: economic damages in an amount to be determined at trial; and compensatory damages in an amount to be determined at trial.

### FIFTH CAUSE OF ACTION
### (Discrimination under the N.Y.C. Admin. Code)

98. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 90, above, with the same force and effect as if fully set forth herein.

99. Defendants illegally discriminated against Plaintiff due to her sex by creating a hostile work environment based upon Plaintiff's sex in violation of N.Y.C. Admin. Code Sections 8-107(1)).

100.    The hostile work environment created by Defendants was sufficiently severe and pervasive so as to detrimentally alter the terms, conditions and privileges of Plaintiff's employment.

101.    David made repeated and continuous unwelcome sexual advances upon the Plaintiff.

102.    New York City's Human Rights Law imposes strict liability for an employer sued for the sexual harassment of its supervisors.

103.     Defendants' conduct was intentional, malicious and otherwise in reckless disregard of Plaintiff's protected rights in violation of the New York City Human Rights Laws, N.Y.C. Admin. Code Sections 8-107(1), 8-107(2) and 8-107(3).

104.     As a result of Defendants' discrimination against Plaintiff, Plaintiff has sustained injury to her career and reputation and has suffered economic and emotional injuries.

105.     By reason of the foregoing Plaintiff is entitled to the following: economic damages in an amount to be determined at trial; and compensatory damages in an amount to be determined at trial; punitive damages in an amount to be determined at trial; and attorneys' and expert fees and costs in an amount not presently capable of ascertainment.

**SIXTH CAUSE OF ACTION**
**(Retaliation under the N.Y.C. Admin. Code)**

106.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 98, above, with the same force and effect as if fully set forth herein.

107.     Defendants retaliated against Plaintiff on the basis of her protected complaints of discrimination in violation of N.Y.C. Admin. Code Sections 8-107(7).

108.     Plaintiff repeatedly objected to David's physical and verbal advances and inappropriate sexual comments.

109.     Plaintiff complained to Defendants Larsen and Tierney that she was being victimized due to her sex.

110.     Following, Plaintiff's objections, Defendants subjected Plaintiff to further harassment.

111.    For instance, David assaulted Plaintiff's fiancée in retaliation, and, immediately following Plaintiff's complaint of harassment and retaliation, Defendants further retaliated against the Plaintiff by terminating her employment without cause.

112.    Defendants' conduct was intentional, malicious and otherwise in reckless disregard of Plaintiff's protected rights in violation of the New York City Human Rights Laws, N.Y.C. Admin. Code Sections 8-107(1), 8-107(2) and 8-107(3).

113.    As a result of Defendants' discrimination and retaliation against Plaintiff, Plaintiff has sustained injury to her career and reputation and has suffered economic and emotional injuries.

114.    By reason of the foregoing Plaintiff is entitled to the following: economic damages in an amount to be determined at trial; compensatory damages in an amount to be determined at trial; punitive damages in an amount to be determined at trial; and attorneys' and expert fees and costs in an amount not presently capable of ascertainment.

**WHEREFORE**, based on the foregoing, Plaintiff respectfully requests that this Court enter judgment against Defendants awarding Plaintiff:

On the FIRST CAUSE OF ACTION, Plaintiff is entitled to economic and compensatory damages plus interest in an amount to be determined at trial, in addition to reasonable costs, attorneys' fees and punitive damages;

On the SECOND CAUSE OF ACTION, Plaintiff is entitled to economic and compensatory damages plus interest in an amount to be determined at trial, in addition to reasonable costs, attorneys' fees and punitive damages;

On the THIRD CAUSE OF ACTION, Plaintiff is entitled to compensatory and consequential damages and interest in an amount to be determined at trial;

On the FOURTH CAUSE OF ACTION, Plaintiff is entitled to compensatory and consequential damages and interest in an amount to be determined at trial;

On the FIFTH CAUSE OF ACTION, Plaintiff is entitled to economic and compensatory damages plus interest in an amount to be determined at trial, in addition to reasonable costs, attorneys' fees and punitive damages;

On the SIXTH CAUSE OF ACTION, Plaintiff is entitled to economic and compensatory damages plus interest in an amount to be determined at trial, in addition to reasonable costs, attorneys' fees and punitive damages;

Dated: New York, New York
      September 15, 2015

Respectfully submitted,
THE LAW OFFICES OF DANIEL FELBER
*Counsel for Plaintiff Sandra Lykes*

Benjamin N. Leftin, Esq., Of Counsel (BL0895)
100 Park Avenue, Suite 1600
New York, New York 10017
T: 212.422.4650

16